The Illinois Appellate Court Third Division is now in session. Your Honorable Justice Martha S. McBride is presiding. Please be seated, everyone. Please put your cards on the floor. Dominance. Dominance. Would the attorneys, both that are going to represent the parties, step up to the microphone and identify yourselves for the record, please. My name is Deepa Punjabi from the Office of the State Appellate Defender, representing Jose Vidaurri. Punjabi, good morning. Assistant State's Attorney Stacey Weber, on behalf of the people of the State of Illinois. Good morning, Ms. Weber. Ms. Punjabi and Ms. Weber, each of you will have about ten minutes to present oral argument, and from then, Punjabi, you may save some time for rebuttal. There are a lot of issues that are raised, and, well, maybe you could focus on the one you think, well, two that you think are very significant. Yes, Your Honor. All right. May it please the Court. Mr. Vidaurri appeals the denial of leave to file his successive post-conviction petition challenging his first-degree murder and attempt murder convictions, as well as his 45-year sentence. Mr. Vidaurri was a 19-year-old offender convicted of first-degree murder and attempt murder on a theory of accountability as a driver in a drive-by gang shooting that occurred in the year 2000. And for many years, he has consistently claimed that his confession was physically coerced by Detective Adrian Garcia, a claim he faulted his trial attorney for declining to assert in his initial 2005 post-conviction proceedings. In his current successive post-conviction proceedings, he now brings before this Court newly discovered evidence showing that Detective Adrian Garcia has engaged in a pattern and practice of physically coercing statements from other detainees. Mr. Vidaurri argues that this corroborates his longstanding claim that Detective Garcia physically coerced his confession. He also argues his trial counsel was ineffective for failing to call Onyx Santana at a motion to suppress and at trial to support his physical coercion claim. Lastly, he argues he has established cause and prejudice for his as-applied constitutional challenge as an emerging adult to his de facto life sentence under the proportionate penalties clause of the Illinois Constitution. So if it pleases this Court, my intention today was to focus on the first two arguments. Is that because on the third argument, Dorsey has rendered that argument ineffective? No, Your Honor. And I'm happy to address that. I just wanted to know if that's why you were dropping it. No, I'm not dropping the argument. Certainly, due to limited time, I thought I would focus on the first two arguments. But I can certainly address the third argument if this Court has questions about it. I don't. Didn't the Clark case sort of put that to rest? No, I don't believe it did. Certainly, in Clark, our Supreme Court held that there's a longstanding recognition that sentencing leniency can also extend to emerging adults and not just juveniles under the Illinois proportionate penalties clause. And so the Court there held that the petitioner had not shown cause for his failure to raise his emerging adult proportionate penalty sentencing claim in his previous post-conviction proceedings. But Mr. Vidore's circumstances are distinguishable from Clark because he did raise that claim. As long as you don't think Clark puts this to rest, I think you should focus on the other two. Yes, Your Honor. Before we do that, just one quick question. So you make an argument that in order to present specific circumstances and evidence with regards to the sentencing, that it's a catch-22. But yet, at the same time, the Act requires specific information, detailed information, in order for a court to be considering whether or not the sentence should be reduced. Can you just quickly address that? I can quickly address that, Your Honor. At the lead-to-file stage, I believe in my reply brief I do quote authorities stating that a petitioner does not have to establish through expert testimony or scientific evidence that he has to establish that his brain development was functionally equivalent to that of a juvenile when he committed his offense. That is not the standard for a pro se lay petitioner. It's not a reasonable standard to expect him to put on expert testimony and scientific evidence. What he does have to show is a prima facie showing that the factors triggering Miller protections are present in his case due to his individual circumstances and background, and he has done that here. The one conviction he had was vacated under Aguilar. He had little criminal background. He was not a principal offender here. There were some things in his childhood that are the things that the Miller line of cases was concerned with. So I do set that out in my briefing. I can get into it more here if you would like me to. But let's move on to your primary issues. Yes, Your Honor. With respect to Mr. Vidari's claim regarding new evidence of detective custody of pattern and practice of abusing suspects in his custody, Mr. Vidari has made a prima facie showing of cause. The factual or legal basis for Mr. Vidari's claim was not reasonably available to him during his prior 2005 post-conviction proceedings. Obviously with respect to the affidavits of Raul Fernandez, the testimony of Josefina Rodriguez and the civil action, these incidents of physical coercion took place in 2000, after Mr. Vidari's initial 2005 post-conviction petition had been filed, I think shortly after it had been dismissed even. So they were unavailable to him in his initial proceedings. With respect to the letter by Isaiah McDonald to Ms. Blagg, Mr. Vidari's post-conviction counsel, that incident of physical coercion took place in 2004, about a year before Mr. Vidari had filed his initial petition in 2005. But, you know, beyond interviewing anyone who had ever been detained at Area 4, Mr. Vidari could not reasonably have obtained this information before his attorney spoke with Mr. McDonald. In Patterson, the Illinois Supreme Court said the same thing about a John Burge torture claim, that short of interviewing every prisoner at Area 2, the petitioner couldn't reasonably have obtained this information before. Now with respect to Onyx Santana, who testified about his physically coerced statement at the grand jury hearing in Mr. Vidari's case, Mr. Vidari also didn't have reasonable access to that information during his prior proceedings. Mr. Vidari's petition states that he was previously unaware of the conditions of Mr. Santana's interrogation, and that he only learned about the grand jury testimony when his post-conviction attorney interviewed Mr. Santana, who then provided an affidavit for Mr. Vidari. So these are factual assertions that should be taken as true at this stage, and it's worth noting that even Mr. Vidari's post-conviction counsel couldn't get a copy of this grand jury testimony. The public defender refused to give it to her despite her best efforts, so it would not have been reasonably available to Mr. Vidari as a pro se layperson petitioner in his prior post-conviction proceedings. Isn't it true, though, that as far as this Onyx Santana, that Detective Garcia did not participate in that interview at all? I don't believe so. I thought that the handwritten statement that's in the record, part of it, shows that he indicates that Sergeant Walsh and an ASA were present, and neither of the other two detectives, Klimack or Garcia, are listed. But Detective Klimack testified at trial that he interviewed Mr. Santana. That doesn't connect anything to Detective Garcia. Well, Detective Garcia testified that he was assisting Detective Klimack with that interview, with his interviews. But none of that is included in the affidavit of Santana. In fact, in Santana's affidavit, there's no detectives named at all. I can see that he does not specify his interrogating officers by name. How are we to infer that into an affidavit? Well, you can also look at the evidence in the trial record. And the trial record does state... We're going to link it up ourselves. I think you can, at the leave the file stage, make that inference, where the trial record says Detective Klimack interviewed Detective Santana, and Detective Garcia was assisting with the interviews. So somehow, we're going to make an inference, not only that Detective Klimack was somehow in this missing affidavit of Santana, but that Garcia assisted Klimack. We're going pretty far afield, though. I don't think you have to go far afield, Your Honor. Detective Klimack said... Detective Garcia stated that he was interviewing witnesses with Detective Klimack. Detective Klimack stated that he interviewed Santana. Santana didn't specify who his detectives were. They could have been Klimack and Garcia. Certainly, Klimack said that he did interview Detective Santana. And we are at the leave the file stage, where we only have to make a prima facie showing of Detective Garcia's involvement. Certainly... But is the prima facie showing... I guess this is my question, Ms. Pugliabi. Is the prima facie showing incumbent on us reading all of these other things that are not included in the affidavit and somehow extrapolating there, okay, now you've got a prima facie? I do think you're getting authority for that. I think you have to read the trial record with the affidavit. Do you have a question about that? Sure. All right. So it's my understanding that part of the basis for the court's denial of the petitions was that the documents and materials that were attached to the petition didn't support that Garcia was ever engaged in any misconduct or abuse. So can you answer that? I mean, it's clearly stated that. You know, that's one of the reasons why the trial court denied the petition. Yes, and I think that was an incorrect ruling. The petition's attachments relating to Mr. Viduri, Raul Fernandez, Josefina Rodriguez, and Isaiah McDonald all specifically named Detective Adrian Garcia or a Detective Garcia from Area 4. And. . . Well, was there any evidence that he was engaged in misconduct or abusive conduct? Yes, there was. So detect certainly. . . . . . as being involved in slapping him, punching his ribs and stomach. Isaiah McDonald states that it was Detective Garcia and Sandra Ball together who were. . . He punched him in the ribs and choked him when he did not provide the desired answers about a homicide. And that he then made. . . This was in a complaint he made to the Independent Police Review Authority that is attached with the letter that he sent to Ms. Blatt. Is that the group of things that was unfounded or no? I think. . . There was a whole group of documents that alleged something. Yes, so there was other documents attached that I don't focus on in my brief. If we could just take a look at what else was attached to this. The Chicago Police Department website listed 15 total allegations against Garcia between 1987 and 2019, a 32-year period. And I'm presuming that Isaiah McDonald's complaint, which was made in 2017, was included in that. Zero were sustained. Zero. In the civil suits that were attached, they were settled and there were no facts included at all, which indicated what Garcia did or didn't do. In the federal lawsuit that was attached, there's no indication of Garcia's involvement at all. So based on everything that we have seen that's attached and which the trial court looked at, I'm not seeing it. Yes, Your Honor. And that's why in my brief I don't focus on the civil complaint register. What does the requirement of a pattern mean then, a pattern of misconduct? What does it mean? Does it mean that they can be things from all over and they don't have to be similar? What is your kind of definition, if you would give us, that means a pattern of misconduct by this particular officer? Yes, Your Honor. A pattern, it does not have to mean, it does not have to mean, our Supreme Court had said in Jackson that it is not exact or perfect identity between all of these allegations of abuse. You just need sufficient similarity to show that there is a pattern of behavior. And in this Court's Brandon case, for example, it was pretty much the same thing, a pattern of abuse very similar to defendant's owning, which the same officers consistently handcuff a suspect to a ring or a wall, on the wall, grab, punch, kick, knee him in various parts of the body, and threaten continued violence until he confesses. And this is how to establish a pattern and practice of abuse. And that is what we have here. Now, just to spirk to your question, there are some documents that were attached that I concede are not necessarily probative of a pattern and practice. And I don't focus on those documents in my briefing. With respect to Josefina Rodriguez, there was the civil action and her testimony. I would submit that her sworn testimony in the civil action should be viewed in the same way that we would view an affidavit. These are things that she is willing to attest to under oath. Was she a witness? She was a witness. So are we going to expand a pattern to witnesses versus those charged, persons actually charged? I do believe that pattern and practice claims do extend to witnesses. Anyone in custodial, in the custody, in custodial interrogations. Josefina Rodriguez, again, I think should be viewed the same way we would view an affidavit for Ms. Rodriguez, to show that these are things she is willing to attest to under penalty of perjury, which is basically what an affidavit is. You know, in the Supreme Court's decision of Allen, the Court explained that an affidavit is not the only kind of factual corroboration contemplated by the Post-Conviction Hearing Act. Prior testimony and unauthorized factual statements, such as McDonald's letters, these things can also suffice at this stage of the proceedings. So would you say, then, that a pattern really doesn't have any limitations, that the actual type of abuse isn't really something we consider? For example, let's say someone said that, you know, they were handcuffed to the wall and that they were kicked in the ribs. Would the – if there were other different types of allegations, would they be a pattern if they were completely opposite of what the injuries, the alleged injuries were? No. No, Your Honor. I would not go that far. They do have to be similar, but it doesn't matter. Well, so I would say, for example, if one person is kicked in the ribs and one person is struck in the face, that is a minor difference. I see. Okay. The commonality, the chain to the wall in the interrogation room, and isn't it true that everybody who is arrested on a crime or held during an investigation is chained? It's more than that they were chained to the wall, Your Honor. It's that they – I'm just trying to get my chart of all the different allegations here. So – Well, you used the word different. I don't think you want to. No. All the allegations – all the separate allegations by the separate people here. You know, Mr. – it's that they were – there were allegations of sleep deprivation and food deprivation, a denial of Miranda rights. Mr. Viduria, Mr. Santana, Mr. Fernandez, and Mr. McDonald all say that they were coached to make a statement and continued with threatened violence until they gave the satisfactory answers. So I would say all of these – there was positional discomfort. I would say all of these things together do show a pattern. In Jackson, they had said in our earlier Patterson case, we don't mean that our strikingly similar language should be a test for admissibility. They should just merely be similar. You know, you started out by saying he had long claimed or had always claimed his statement was involuntary. But that's not really correct, is it? There was never any claim at the direct appeal that his statement was involuntary because he had been beaten. Was there? There wasn't, Your Honor, but he does address that. He states that in his petition – But in these other cases, for example, the case at this court issued, and it's either Brandon – That was actually the fact, and the allegations were actually virtually the same. Yes, Your Honor. So I don't think the Brandon case is the same. It's not perfectly on all fours. I do think there are some similarities in some of the reasoning holds here, particularly with what kind of pattern will suffice. Here, though, Mr. Viduri explained in his petition that he told his trial attorney, Martha Fitzsimmons, about his claim of physical coercion, and she declined to challenge his confession on that basis. When he raised the issue with his counsel on direct appeal, she advised him to raise the claim in a post-conviction petition because it would need his affidavit and allegations outside the factual record. And so that's what he did in 2005 when he filed his initial post-conviction proceedings. There was also a Federal habeas claim. There's also Turk proceedings compending right now, the Torture, Inquiry, Relief, and Commission. Now, the original videotape of his confession is not in the record. You're aware of that, right? He actually – we had a videotape on this case initially for the direct appeal. It was not in the record. It was viewed by this Court. And in that, Mr. Viduri is seated very calmly at a table. I think at some point his hands were folded. Maybe he – yeah, I don't think he was handcuffed at that point. But we noted how calm and collected he was. And that was obvious from the videotape. But it's not here in this record. Does that help us or hurt us or what? Or does it matter? Well, I think – It's like the grand jury transcript was of this Santana. That's not in the record either. It's not. It's not. That's correct, Your Honor. Again, Ms. Blatt said that she had tried to obtain it, that she could not obtain it from the public defender. I think certainly that's something that could flesh things out at further proceedings, you know, where Mr. Santana's recollection was more refreshed at that point. You know, I acknowledge that this Court did previously reject Mr. Viduri's claim based on the video concluding that the videotape confession refuted Mr. Viduri's claims of physical coercion because he appeared calm and cooperative and had made a statement that he was willing to cooperate. But in judging this claim, this Court – And that doesn't necessarily mean, and I'm not suggesting, that there couldn't be abuse. I'm not suggesting that. Because it apparently has happened. All right? Well, and what I was going to say is just the Court didn't have the benefit at that time when it was judging his physical coercion claim of these additional allegations of abuse made by other people. And I think that that new evidence warms a second look at Mr. Viduri's physical coercion claim, and it does put things in a new light, you know, particularly his statement at the end of the video statement where he states that he wants everyone to know that he's willing to cooperate in light of this new pattern and practice evidence. I think you can see that through a different lens as an attempt by Mr. Viduri to avoid further physical abuse by saying to the authorities, Look, I will give you what you want. I'm cooperating. You don't have to hold me under these conditions any longer. But instead of inferring, what direct evidence is there then? Well, we have his affidavit. You're asking us to infer that that's what is taking place, right? Yeah, we have his, yes, Your Honor. We have his affidavit that he, this is, and again, this is consistent from his prior proceedings. He's been making this claim to anyone who will listen as soon as he can. We do have his affidavit where he recounts these allegations, which are in many ways very similar to what Onik Santana said was happening to him at the exact same time in the exact same investigation. Does it matter that the Federal District Court in its habeas kind of reviewed the, not the same claim, but the claim of the involuntariness of his statement? No, because I don't believe he had all of this pattern and practice evidence attached to that petition. And again, I do think that that puts things in a new light and does at least warrant further scrutiny and development of this claim at further proceedings. All right. Anything further you want to add? You're certainly going to have more time for rebuttal. No. Were there other questions? Not at this time. Thank you. Then for the reasons argued here, we'd ask for a reversal and remand for further proceedings. All right. Ms. Weber. Thank you, Your Honor. May it please the Court. How would you define a pattern and practice? Patterson defines pattern and practice in that it is closeness in time, similar abuses, and allegations, not general claims. So pattern and practice not only has to be similar methods, but they also need to be specific. Looking at these allegations, there are really only four that could possibly support the defendant's claims, that of Onyx Santana, Isaiah McDonald, Raul Fernandez, and Josefina Rodriguez. And only two of those are specific to any extent whatsoever. That is Onyx Santana's affidavit and Josefina Rodriguez's sworn testimony. Isaiah McDonald and Raul Fernandez have a one-paragraph general allegation that they were abused. McDonald says that he was violated physically and constitutionally. He doesn't even claim that he was coerced into giving a statement. We'll grant you that's not specific. And the same with Fernandez is that he was punched and I think he said he was, my spreadsheet, that he was punched in the stomach and that he was handcuffed to a metal bar. That's not a pattern and practice. That is the epitome of a general allegation of abuse. So those two claims should be disregarded entirely because they do not support the defendant's pattern and practice. Looking to the other two that do contain specific allegations, with regard to Onyx Santana, I mean, this court is correct. It is not Garcia. It's not Garcia. Onyx Santana makes no claim in his affidavit that it is Garcia. He makes no mention that it is any detective. He does not name any specific detective. He does not describe a detective. But in his actual handwritten statement, the detective is Gephardt and an assistant state's attorney that's not Blakey. Yes, former assistant state's attorney, Jack Blakey. No, they are two different detectives. But there's more than just a handwritten statement. There are the supplemental reports. There is the testimony. There is the polygraph report. It is clear from all of the record, which this court is not obligated to, you know, go through with a fine-tooth comb, but it is clear that Santana, Detective Klimek, spoke to him the night he was arrested. He spoke to him the next day, and then he followed up on his alibi, and then he came back and spoke to him. He took him for a polygraph the next day, and then he came back and spoke to him, and then he went and talked to the girlfriend and got the phone records and recovered the gun, and then he came back and spoke to him. And then Santana gave a handwritten statement. There is nothing in the record. Santana gave a handwritten statement to two other people. And then he gave a handwritten statement to two other people. There's nothing that supports he had anything to do with Garcia. So, yeah, Garcia's name isn't even really identified with all the work that Klimek is doing on the initial questioning of Santana. Yes. So Garcia has nothing to do with Santana. There's no support for that. So that clearly is completely irrelevant to a pattern and practice claim that the defendant tries to raise now. With regard to Josefina Rodriguez, these specific claims that she makes about pattern and practice and abuse is in her sworn testimony in the lawsuit filed by Ramon Ayala. In that lawsuit, Detective Garcia is not one of the named participants. The lawsuit is not against him. He is not named in Josefina's testimony. She doesn't name him. He's not – there are no allegations against him. She doesn't – I mean, the circuit court judge was quite – there's nothing that she says against him. The only allegation against him specifically is made in the complaint in her lawsuit that is drafted by her attorneys that say that the three detectives, including Detective Garcia, threatened to arrest her, refused to let her go, and denied her requests for food. And there was no given name to Mr. Garcia, was there? I believe in the lawsuit she did name Adrian Garcia and his star number. All right. But the only allegation is that he denied food, and that is something that the defendant does not claim. He does not claim that he was denied food. It is clear from the interview that he was fed, and he was fed again. He was fed – That's why I said they threw the food. No, that was on a Santana. I apologize. Threw the food. No, I – in his – he never says that he was denied food. He never says that he was starved or starving. He says in his – this is the defendant. He says in his affidavit that after the second interview, Detective Garcia asked if he was hungry or needed anything. He needed a cigarette. He said that he was hungry, so Detective Garcia unhandcuffed him to the wall. And then he later says he threw up for about five minutes because he could not hold the food down, which implies that he was, in fact, fed. And then after the video with the state's attorney – so he's fed before he gives the videotaped statement. And then after the first interview with the ASA, so – but before he gives the videotaped statement, he is fed again. Again, Detective Garcia asks if he's hungry, and he brings him – he says, I was asked if I was hungry. I said yes, and I was brought some more food. And then they went to do the video. So he's being fed this entire time that he is in custody. So the claims that he was being starved, that this is some similar allegation, that's not borne out by the record. So counsel names all of these different cases and asks to, like, swirl them all together. And if you look at everything together, then it becomes a big pattern in practice. But if you look at them, it's not – it's not specific. And the ones that are specific have nothing to do with Detective Garcia. Is there also a requirement about close in time, proximity in time? There does need to be close proximity in time. And all of these incidents occur in 2004, 2005, although – Isaiah McDonald, although he claims that he was abused in 2004, he does not report the claim to IFRA until he is in IDOC in 2013. So this case is distinguishable from the cases relied upon by defendant. If you look to the cases that have reversed for pattern and practice in Patterson and Brandon, in Rice and Reyes, not only were those cases where the defendant had claimed from the very beginning, from bond court, from motion to suppress statement that they had been abused, but in all of those cases, they involved oral statements, written statements. I think one of them involved a court-reported statement, but none of them involved a video statement. That's the whole reason that there is video statements. So the court, the trial court, can see the demeanor, can see how the defendant is acting, can look for clues whether the defendant makes a spontaneous statement, as he did in this case. And this court did make a finding in his 2005 post-conviction petition that he appeared to be relaxed, that he was cooperative, calm, forthcoming with his answers, and was persuaded with his spontaneous statement. And this counsel does state, well, perhaps you could infer that he was afraid of being abused some more, but that is contradicted by the defendant's own affidavit, where he says that the reason he gave that spontaneous statement is because he believed he had a deal with Detective Garcia and ASA Blakey for 10 years, but he did not trust them to keep their end of the bargain. So he took a chance, and he asked to make the statement because he didn't want to violate the agreement that he had with them. So he asked if it was okay if he made a statement, and he made a statement at the end of the video, because I wanted to show the judge to know about the deal with Detective Garcia and Jack Blakey. Was Kleemak in that videotaped at all? I don't recall. No, he was not. So I can't recall specifically. No, they were. It was Blakey? It was Blakey, and Detective Adrian Garcia. Yes, it was. Your Honor, so there just is not enough to show a pattern and practice of this case. So while this is a first stage, it is a successive petition. It is not a just standard. Although it is prima facie based, they must put forth enough evidence to show cause and prejudice, make a prima facie. Well, cause could easily be suggested here because these allegations have come later in time. I mean, you may dispute this, but your primary argument is that there's not prejudice been shown, and that these allegations do not meet the pattern and practice definition, so to speak, or rule regarding allegations of abuse. Yes, Your Honor. We would argue that. And for the same reason, it does not meet ineffective assistance of counsel. That claim was raised. It's been litigated. But even if you consider that this affidavit is new evidence, this is not an unreasonable action on the part of defense attorney. I mean, when you have, assuming that the affidavit of Santana is just the best that it could possibly be, you know, when the defendant filed his post-conviction petition, at that point he aversed that Santana was uncooperative. So even if Santana was cooperative, you know, at the time of the trial, they still have the contradictory written statement that Santana gave, and they have the contradictory videotaped statement that the defendant made. And there is nothing in the record that shows that Garcia had anything to do with Santana's interrogation. So it is unlikely that that would have had any relevance or been allowed at all. So his ineffective assistance of counsel claim also fails. I have a question about the longstanding pattern. They argue that Garcia's incidences of abuse span over five years, and that's a reflection of the fact that it was a longstanding pattern that he participated in. I mean, does that make a difference? Like, do we have to look at five years? Is there a time frame where we say, okay, they've established a longstanding pattern here? A longstanding pattern could be five years, it could be ten years. In some of these other cases where the state did not challenge the evidence, did not challenge the evidence of abuse, like in the Burge cases, they occurred over decades. But this is defendants who claim this incident happened in 2000, and then these other cases that happened in 2005. So it does not appear to be this longstanding, you know, sequence of abuse that is happening over this extended period of time, especially considering that there have never been any findings of, never any sustained findings, any, like, findings of, guilt is not the right word, any findings of wrongdoing in civil courts and the lawsuits against him, but no findings against Detective Garcia at all. And this just does not rise to the level to show prima facie showing of cause. Anything further? No, Your Honor. So just in summary, none of the evidence attached to the position rises to the level to show prima facie showing of cause and prejudice, and we would ask for these reasons and those mentioned in the brief that this Court affirm the circuit court's denial of the defendant's petition, motion further filed subsequent post-conviction petition. All right. Thank you. Thank you. Ms. Punjabi, would you like to make a brief rebuttal? Yes. And before you do, I'm going to directly reference what Ms. Weber just said. There has never been a single finding, any judgment ever entered determining that Detective Garcia physically abused anyone. What do you say to that? I say that that's not the standard. I say that — Well, yeah, maybe it's not the standard, but does that impact your argument at all? No, Your Honor. I mean, I acknowledge, yes, there has not been any on-the-record finding. But, you know, again, we — I don't think that goes to — these are still consistent claims that Mr. Viduri has been trying to make. To the extent that nothing came out in his case, it's because his trial attorney declined to litigate it. I acknowledge that in these other cases that there haven't been findings, but there are affidavits that we have found that there have been findings. The credibility of these factual assertions, that's a question for later proceedings. So that would be my response to that question, Your Honor. Because a couple of questions came up about timing, let me just address timing for a moment. You know, the timing of all these incidents does support a finding of a pattern in practice. Our Supreme Court has explained that while a single incident, years removed, will not establish a pattern in practice, a series of incidents spanning several years can establish such a pattern. For example, in this Court's Brandon decision, the defendant's alleged abuse occurred in 1991, that two other instances occurred in 1992, two others occurred in 1999 and 2001. And this Court found that that did constitute a series of incidents spread out over years that suggests a pattern in practice. Here in this case, there are some significant allegations, aren't there, that the Assistant State's Attorney at that time, Mr. Blakey, that he was intimately involved in this whole scheme to coerce a confession with Detective Garcia. What do you say to that? I say that it does help put, so I recall that Mr. Viduri's affidavit stated that Assistant State's Attorney Blakey told him that, you know, if he cooperates, then he can go home. Didn't he also say that they rehearsed and rehearsed and rehearsed? That they coached his statement, yes. And he fully implicated this Assistant State's Attorney Blakey, didn't he? He did. And again, to the extent that this Court is skeptical of that factual assertion, that is something for Doesn't that all go to the prejudice prong? No, I think that Looking at it, do we really look at it in a different light? When we have this suggestion that doesn't seem to be apparent from the original statement, but that's part and parcel of what the claim is, isn't he claiming that? This was all a big He certainly was claiming that Detective Garcia was not the only one involved in misconduct here, but again, to the extent that this Court is inclined to make a credibility determination about that assertion No, we don't do that. We're not going to do that. Yeah. No, we don't do that. So I'm just, I was just asking a question about that fact. I But we do determine whether there's been a showing of prejudice. We do, and I do think that he has made that showing here. You know, to get to some of the specifics, for example, Counsel talked about Josefina Rodriguez, that she did not implicate Detective Garcia specifically. I would dispute that. She, she, I would argue that she does implicate Detective Garcia specifically enough to satisfy the leave-to-file standard. You know, he's one of the three detectives named in the complaint. The complaint names Detective Kevin Boer, Patrick O'Donovan, and Adrian Garcia. And her testimony in the civil action describes two white detectives and one non-white detective who was shorter with black hair and glasses. And it was the non-white detective that was involved in the misconduct and hanging her by the wall and ignoring that her wrist was turning purple as she was crying for help. And I think we can infer, at least at this stage in the proceedings, where only a prima facie showing is required, that the non-white detective described in her testimony was Detective Garcia, not Kevin Boer or Patrick O'Donovan, just based off the names. I think this does make at least a prima facie showing of Detective Garcia's involvement. Certainly it could be more conclusively established at further proceedings. What was the year? Is this the same time? Oh, gosh. For this one, it was five years out or 17 years out? 2005. Oh, five years out, okay. Yeah, so it was Onyx Ventana obviously occurred around the same time. Raul Fernandez, that occurred in 2005. Josefina Rodriguez, it occurred later in 2005. And Isaiah McDonald occurred in March of 2004. The letter to Ms. Blagg is March of 2005, but the abuse he's talking about is in March of 2004. So I do think that that timing does establish a series of incidents spanning years that supports a pattern in practice. Let me wrap it up. Sure. So I just wanted to make a quick point. The counsel did state that with respect to McDonald and Fernandez, there was only one paragraph, but I think it was sufficiently specific at the leave to file stage. It doesn't need to be pages and pages long. They say that they were threatened with violence and did experience violence while cut to a wall and coached to make a statement and that it would not stop until they gave a satisfactory statement. I think that at the leave to file stage, that does suffice. You know, this was a counsel petition, very detailed, 50 pages long, not including supporting affidavits. It's not the kind of petition a pro se petitioner would likely have been able to draft. If this kind of filing does not meet the leave to file standard, it's difficult to imagine that any pro se layperson could. So were there any other questions that I could answer? No. If not, then we respectfully request for the reasons argued, reversal and remand for further proceedings. Thank you. Thank you both today for your arguments on this case. And it will be taken under advisement. And we will adjourn here. And then we're going to call the next case.